In the Matter of JAMES J. MALLEN, Petitioner, against FERDINAND Q. MORTON et al., Constituting the Municipal Civil Service Commission for the City of New York, Respondents.

Supreme Court, Trial Term, New York County, July 5, 1950.

*Leo Brown* and *Robert A. Schaffer* for petitioner.

*John P. McGrath, Corporation Counsel (Saul Moskoff* of counsel), for respondents.

Di Falco, J. A proceeding was instituted by petitioner, pursuant to the provisions of article 78 of the Civil Practice Act, for an order compelling respondents, the municipal civil service commission for the city of New York, to declare petitioner eligible for and to give him a special promotion examination, as provided by subdivision 5 of section 246 of the Military Law, for the position of executive officer in the department of parks, comparable to the examination held on July 6, 1944, for this position, at which time petitioner was in the military service. The proceeding was opposed by the commission on the grounds (1) that petitioner did not meet the eligibility requirements of the notice of examination, and (2) that the proceeding was barred by the four-month limitation period provided by section 1286 of the Civil Practice Act. Heretofore, Mr. Justice Hammer, at Special Term where this proceeding originated, determined that triable issues of fact were presented and directed that the issues be tried by the court without a jury, pursuant to section 1295 of the Civil Practice Act. On appeal by the commission, this determination was affirmed by the Appellate Division and by the Court of Appeals (*Matter of Mallen* v. *Morton,* 86 N. Y. S. 2d 147, affd. 275 App. Div. 918, affd. 300 N. Y. 478). Thereafter, the proceeding was assigned for trial before me and the following issues were presented for determination: (1) Were petitioner's qualifications and experience sufficient to meet the terms and requirements of the advertisement, i.e., did petitioner have the responsibilities equal to or greater than those of persons in charge of the division of design and construction, division of maintenance and operation, or the division of audit and control; (2) were the notifications to petitioner dated October 15, 1946, and April 3, 1947, such determinations as barred this proceeding pursuant to the four-month period of limitation prescribed by section 1286 of the Civil Practice Act?

The trial consumed six days, during which time the parties presented to the court an exhaustive, thorough, and vigorously contested inquiry into the issues. The record consists of 666 pages of testimony in addition to voluminous exhibits in evidence. To quote or recite pertinent portions of the testimony or evidence would be burdensome and repetitious. It is not my purpose to enter into an extended discussion of the conflicting claims, evidence and authorities involving questions having a

greater or less bearing upon the issues. However, certain facts predominate and have persuasive bearing upon my determination of the controverted issues herein.

The petitioner is an engineer by education and professional training. He entered the competitive civil service of New York City in 1927 and subsequently, as a result of various competitive civil service examinations, was appointed to the position of park director in the department of parks in June of 1936. He held such position until November, 1943, when he entered military service, commissioned as a captain in the army. On June 30, 1946, he was honorably discharged with the rank of major. In August, 1946, he was restored to duty and assigned as park director in charge of the borough of Richmond. He still occupies that position.

On April 25, 1944, while petitioner was absent, on military duty, the commission ordered a promotion examination for executive officer in the department of parks and published a notice of examination.

On May 25, 1944, the commission wrote petitioner advising him of the examination and that he could take a special promotion examination upon his release from military service if he were otherwise eligible. On September 12, 1946, shortly after his return to duty as a park director in the department of parks, petitioner did file his application on the forms prescribed by the commission for leave to take an examination for promotion to the position of executive officer in the park department comparable to the promotion examination for that position held July 6, 1944, at which time petitioner was absent on military duty. On October 16, 1946, he received an official form of notice, authorized for use by the commission, dated October 15, 1946, that he was not qualified under the terms of the advertisement to take the aforesaid examination. On December 12, 1946, petitioner filed a notice of appeal from the aforesaid ruling which was referred to the committee on manifest errors pursuant to paragraph 5 of section V of rule V of the Rules of the Municipal Civil Service Commission. On April 4, 1947, petitioner received a letter advising him that his appeal had been unanimously denied by the four persons comprising the committee on manifest errors, who reported " no manifest error ". The letter further informed petitioner that " under the Rules, which are law, the Commission must accept that report ". This letter is dated April 3, 1947, and is on the form letterhead of the city of New York municipal civil service commission, signed by S. H. Galston, director, examining division.

Subsequently, petitioner's then attorney, by letter to the commission, dated June 24, 1947, challenged the applicability of the validity of paragraph 5 of section V of rule V as well as the finality of the action of the committee on manifest errors. Finally, the commission, by letter dated July 3, 1947, denied said attorney's application on behalf of petitioner. Thereupon petitioner, on October 24, 1947, instituted this proceeding.

At this juncture of facts and events I am first going to pass upon the technical objection to the proceeding which has been raised by respondent, viz., that the proceeding was not commenced within the four months' limitation period prescribed by section 1286 of the Civil Practice Act. Determination of this objection is also made so that there may be finality to this decision.

As stated, Special Term granted the application herein to the extent of directing the issues be tried by the court without a jury, and held that, with respect to the objection that the application is barred by section 1286 of the Civil Practice Act, the validity of the said defense was " at least open to question as an issue of fact in view of the Commission's letter of July 3, 1947, in answer to that of June 24, 1947 of petitioner's attorney. * * * Under all the circumstances disclosed by the papers on both sides, it appears that this issue should not be decided on the motion papers but reserved for determination upon a formal hearing." (*Matter of Mallen* v. *Morton,* 86 N. Y. S. 2d 147, 149, *supra.*) On appeal from this phase of the holding, the Appellate Division affirmed, one justice having dissented and voted " to reverse and dismiss the proceeding on the ground that it was not timely brought as *the four month limitation should run from April* 3, 1947." (275 App. Div. 918; italics supplied.) Thereupon a motion for leave to appeal to the Court of Appeals was granted by the Appellate Division (275 App. Div. 937) which certified the following question of law to the Court of Appeals for review: " Should the defendant's affirmative defense have been sustained and the proceeding dismissed on the ground that it was not commenced within the four months period of limitation prescribed by section 1286 of the Civil Practice Act? " The Court of Appeals (300 N. Y. 478) affirmed the holding below and answered the question certified in the negative.

Regarding this issue I find the following significant evidence has been produced before me. Petitioner's Exhibit 7 is the original notification from the commission to petitioner that he was not qualified under the terms of the advertisement. This

notice is dated October 15, 1946. Upon receipt of same petitioner appealed and subsequently received a letter, dated April 3, 1947, on the form of the respondent commission, that his appeal had been denied. This letter is petitioner's Exhibit 9 in evidence. Sidney Stern, a civil service examiner, testified on behalf of the respondent with respect to the practice, procedure and rules followed by the commission in arranging for promotion examinations. His testimony reveals that when the examiners find a candidate not to be qualified, they so notify him on a form which he had originally signed (Petitioner's Exhibit 7 here). He may then make an appeal, under the rules, to the committee on manifest errors. In the event of their unanimous denial of the appeal, the rule prescribes that that ends the appeal and that is the practice of the commission. This testimony of Stern is uncontradicted by petitioner and is of persuasive weight regarding the issue discussed. The rule referred to is rule V (§ V, par. 5) of the rules of the municipal civil service commission, and reads as follows: '' No test paper or any part thereof and no record of the result of a physical test, or any other record or statement rated as part of an examination, or in connection therewith, shall be subject to review, alteration or rerating after the marks of the examiners have been registered or attested as required hereunder; except that the Commission, at any time within a year from the date of the promulgation of an eligible list, may correct any manifest error or mistake of marking or rating appearing in any such paper or record, the nature of which error or mistake it shall set forth in its minutes. Where an application for a correction in rating is requested under the foregoing provisions, such application shall be referred to a ' Committee on Manifest Errors,' consisting of three members appointed by the Commission. Such Committee shall inquire into the merits of each application and shall submit a signed report to the Commission setting forth its findings, with such readjusted rating as it may recommend. No application shall be granted which has been unanimously disapproved by such Committee.''

This rule has the force and effect of law (*Matter of O'Brien* v. *Delaney,* 255 App. Div. 385, 387, affd. 280 N. Y. 697). Under it a unanimous disapproval by the committee on manifest errors of an application for a correction is a final and binding determination. Petitioner's right to apply for review is conferred solely and is limited by said rule V and not by any other statute or authority. The unanimous disapproval by the committee, therefore, precluded any further review or application by the

respondent commission. The commission is without power to suspend or modify the operation of any such rule (*Matter of O'Brien* v. *Delaney, supra*). Petitioner's claim, therefore, that the statute was tolled by commission's response on July 3, 1947, to his then attorney's request, dated June 24, 1947, is untenable. Such response could not have the legal effect of tolling the period of limitation, in view of rule V (§ V, par. 5) and in view of the uncontradicted evidence of Sidney Stern, as the commission could not under the rule take cognizance of petitioner's appeal already unanimously disapproved by the committee on manifest errors.

Section 1286 of the Civil Practice Act provides as follows: " A proceeding under this article * * * must be instituted by service of the petition and accompanying papers * * * within four months after the determination to be reviewed becomes final and binding ".

I find and decide from the evidence before me that the notification of April 3, 1947, was a final determination and denial of petitioner's appeal. The subsequent request for reconsideration could not and did not operate to extend the time of petitioner within which to institute an article 78 proceeding (*Matter of Weinstock* v. *Hammond,* 270 N. Y. 64; *Matter of Hall* v. *Leonard* 260 App. Div. 591, affd. 285 N. Y. 719; *Matter of Harrington* v. *Coster,* 194 Misc. 577; *Meyer* v. *McNamara,* N. Y. L. J., March 21, 1950, p. 998, col. 5, Hofstadter, J. *Matter of Nachbar* v. *Bruckman,* 249 App. Div. 723, motion for leave to appeal denied, 249 App. Div. 814; *Matter of Mottsman & Co.* v. *State Liquor Authority,* 174 Misc. 41; *Matter of Rosenblatt* v. *Finkelstein,* 84 N. Y. S. 2d 193; *Matter of Morganstein* v. *Arnstein,* 43 N. Y. S. 2d 243).

The statute must be deemed to run from the date when the first decisive ruling is made and petitioner cannot, by renewing the application, extend the limitation imposed by the statute (*Matter of Hall* v. *Leonard, supra*). To permit petitioner to extend or toll the statute by mere letter writing, or so-called renewed applications for reconsideration, would be to open the doors to such a practice as would toll the statute ad infinitum, and make an absurdity of the statute. By such indulgence there would never be a final or binding determination. (See *Matter of Morganstein* v. *Arnstein, supra*.) Accordingly, I find and decide that petitioner's right to maintain this proceeding is barred by section 1286 of the Civil Practice Act.

Coming now to the merits of the controversy, it is necessary to determine whether petitioner was, in fact, qualified to take the promotion examination in accordance with the eligibility

requirements set forth in the notice of examination. Petitioner admits that he does not question the legality or propriety of the appointment of the present incumbent, Arthur Hodgkiss, to the position of executive officer. He does not seek to have the promotion examination set aside, nor does he question or object to the requirements set forth in the advertisement for the examination. He only seeks, by this proceeding, the right to take the examination and, if successful in passing it, a place on a special eligible list. It is, therefore, incumbent upon petitioner to show that the action of the respondent was arbitrary, unreasonable or capricious in rejecting his application to take the examination. There is a presumption in law of the reasonableness of the act of public officials (*Matter of City of New York [Ely Ave.]*, 217 N. Y. 45; *Hood* v. *Guaranty Trust Co.*, 270 N. Y. 17, 38; *Matter of Whitman*, 225 N. Y. 1, 9; *Hamilton* v. *Erie R. R. Co.*, 219 N. Y. 343, 350; *Matter of Ormsby* v. *Bell*, 218 N. Y. 212.)

The notice of examination contained the following provisions:

" Promotion to Executive Officer.

" Eligibility Requirements: Open to all permanent employees in the Department of Parks who have served continuously as an executive in the department for a period of not less than three years next preceding the date of the examination and who are otherwise eligible under the rules of this Commission. The executive must have had responsibilities equal to or greater than those of persons in charge of the Division of Design and Construction, Division of Maintenance and Operation, or the Division of Audit and Control.

" Duties: In accordance with the provisions of the Administrative Code, to act generally for or in place of the Commissioner of Parks or as the incumbent of any other office to which he has been appointed by the Mayor. To act as chief executive in charge of administration, responsible to the Commissioner; supervise other executives who are heads of divisions; make and be responsible for all contacts with other City and State departments and governing boards; perform related work. The appointee must be familiar with the relationship between the Park Department and other governmental agencies and must have the ability to execute orders of the Commissioner ".

It will be observed that said notice of examination requires that an applicant, to be eligible, must have " served continuously as an executive in the Department of Parks for a period not less than * * * and have had responsibilities equal to or greater than those persons in charge of the Division of Design and Construction, the Division of Maintenance and

Operation or the Division of Audit and Control ''. The evidence convinces me that these eligibility requirements were arrived at by fair and reasonably established practice. The initial step leading to the holding of the promotion examination was a communication from Commissioner Moses to the municipal civil service commission requesting that such examination be held. Acting upon same, and in accordance with established practice, the commission sought all pertinent information from the department of parks and Commissioner Moses relative to the position to be filled. With the information at hand, the advertisement was prepared containing the requirements for admission to the examination. Commissioner Moses, as head of the department of parks, was the person best qualified to evaluate the position and the commission accordingly put great weight upon his recommendations. The evidence before me established the position of executive officer as being most important next to that of the commissioner, and that the requirement of such high standards was, therefore, a reasonable exercise of the discretion vested in the commission (*Matter of Cowen* v. *Reavy,* 283 N. Y. 232, 237; *People ex rel. Sweeney* v. *Rice,* 279 N. Y. 70; *People ex rel. Caridi* v. *Creelman,* 150 App. Div. 746, 749; *Matter of Furman* v. *Marsh,* 185 Misc. 209). The commission is charged with and has the power and function under the law to fix a fair and reasonable standard by which the qualifications of applicants may be tested (*Davis* v. *Weiner,* 260 App. Div. 127, affd. 285 N. Y. 537; *Matter of Kanen* v. *Kern,* 260 App. Div. 500; *Matter of Furman* v. *Marsh, supra*), and where there has been, as here, a reasonable exercise of this power, the courts will not substitute their views for those of the commission (*People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92; *Matter of Sheridan* v. *Kern,* 255 App. Div. 57, 59; *Matter of Furman* v. *Marsh, supra; Matter of Gauthier* v. *Rice,* 246 App. Div. 179, 182; *Matter of Rosenstrauch* v. *Reavy,* 174 Misc. 446, 450).

Coming now to petitioner's contention that he was entitled to be qualified for the promotion examination because he held a position in the next lower grade to that for which the examination was to be held, I hold same to be untenable. The mere fact of being in the next lower grade was insufficient, standing alone, to qualify him if he did not possess those further qualifications established and required by the commission (*Matter of Simon* v. *Reavy,* 267 App. Div. 922; *Matter of Kanen* v. *Kern,* 260 App. Div. 500, *supra*). Petitioner, in seeking to establish his eligibility for the examination, relies to great extent on a comparison of his qualifications with those of Hodgkiss, the present incum-

bent in the position of executive officer. Hodgkiss had taken the examination, having been found qualified by the commission, passed and is now serving in the capacity aforestated.

I do not find that the evidence supports petitioner's claim. Rather, the evidence amply supports respondents' determination, that petitioner was not qualified. The evidence by one George E. Spargo established that he was designated as the executive officer on September 1, 1938, and had full responsibility of the department of parks under Commissioner Moses; that Hodgkiss acted as his assistant, with office title of assistant executive officer; that from 1938 to 1943 Spargo assigned to Hodgkiss all duties which fell to Spargo, except that of voting in the planning commission; that Hodgkiss handled all of the program of design and construction in the parks and playgrounds; that '' at first in 1938 he (Hodgkiss) didn't exercise full authority over all of the people working for the department. He started with Design and Construction and shortly after that I gave him more delegated power over the Maintenance and Operation forces and subsequently over Audit and Control, which was the third section in the department ''; that Hodgkiss was also a member of the executive staff of the department of parks, which staff was composed of the commissioner, the executive officer, the assistant executive officer and the heads of the divisions of design & construction, maintenance & operation and audit & control; that at the time the promotion examination was held, in July, 1944, for position of executive officer, Hodgkiss was then holding that position provisionally; that from May, 1938, to January, 1944, he was the assistant executive officer and vested with authority on a city-wide level; that petitioner was authorized to act only on a borough-wide scale, with a very limited freedom of action, and subordinate to each and every member of the executive staff; that at meetings of borough directors, which were under the executive in charge of the maintenance and operation, any determinations or decisions rendered by them were reviewed by the assistant executive officer, by Hodgkiss and by the commissioner; that the borough directors were below the line of authority of the chiefs of design and construction and audit and control; that the borough directors were below the executive group and reported to one member of the executive staff; that the heads of the design, construction and personnel divisions were all below the executive group in the department; that borough directors report to the head of maintenance and operation, who is their superior officer. Mr. Spargo further testified that Hodgkiss acted as his substitute,

but that never was a borough director designated to take his place.

Further testimony as to petitioner's subordinate position as a borough director was given by Commissioner Moses. The proof, therefore, amply established that petitioner was vested with no authority or duties comparable to that vested in Hodgkiss and that he was in fact subordinate not only to Hodgkiss but to the heads of the three divisions aforementioned. The proof further established that petitioner did not possess duties and responsibilities equal to or greater than those of Hodgkiss.

Petitioner's attorneys have pressed his cause in a very forceful and appealing presentation. However, I am satisfied that petitioner's position is untenable and does not warrant the determination he seeks under the circumstances presented. He could not meet the qualifications required, was ineligible therefore to take the promotion examination and was properly rejected. The proof before me on the entire case establishes to my satisfaction that the determination of the commission was not arbitrary, capricious or unreasonable, and that interference with the exercise of the commission's discretion, in disapproving petitioner's application, is not warranted. I cannot say that the commission's action was arbitrary, capricious or unreasonable in determining that petitioner lacked the necessary qualifications to take the examination. Neither can this court ignore the established policy of having the judicial branch of our government refrain from exercising its independent judgment in equity or on those matters which are to be administered by duly constituted boards, commissions and other authorities. The decisions are legion that the court may not substitute its judgment for that of the commission where there appears to have been a rational basis for the commission's determination. It is not the function of our courts to interfere with the orderly administration of the business and of the determinations of administrative bodies in the proper exercise of their discretion, unless the same can be shown to be arbitrary, unreasonable or capricious (*People ex rel. Schau* v. *McWilliams, supra; People ex rel. Caridi* v. *Creelman, supra; Matter of Furman* v. *Marsh, supra; Matter of Imbrioscia* v. *Quayle,* 91 N. Y. S. 2d 86), nor to undertake to substitute their judgment for that of the civil service commission upon whom is imposed the duty of determining the merit and fitness of those submitting themselves for examination, preparing examinations and rating same (*Matter of Gunning* v. *Altman,* 198 Misc. 123, and cases cited therein; *Matter of Feeney* v. *Village of Bronxville,* 185 Misc 1,

affd. 269 App. Div. 1040, affd. 295 N. Y. 904; *Matter of Vitale* v. *Conway,* 198 Misc. 140, citing *Matter of Sheridan* v. *Kern,* 255 App. Div. 57, *supra; Matter of Gauthier* v. *Rice,* 246 App. Div. 179, *supra; Matter of Allaire* v. *Knox,* 62 App. Div. 29, affd. 168 N. Y. 642; *Matter of Cowen* v. *Reavy, supra).* In the latter case of *Matter of Cowen* v. *Reavy (supra,* p. 237) the Court of Appeals stated: '' It is a function of the Civil Service Commission to fix a fair and reasonable standard by which may be tested the qualifications of applicants for appointment in the civil service. The exercise of that function may be the subject of judicial review only in the event of a clear showing that in fixing the test of fitness the action by the Commission was arbitrary, capricious or unreasonable *(People ex rel. Sweeney* v. *Rice,* 279 App. Div. 70, 73; *Matter of Andresen* v. *Rice,* 277 N. Y. 271, 276, 277; *Matter of Barthelmess* v. *Cukor,* 231 N. Y. 435, 443).''

Since all presumptions are in favor of the commission's order, it can be upset only by an affirmative showing of error and the burden is on those who claim error to show it (4 C. J., Appeal and Error, § 2662, pp. 731 *et seq.,* cited by WALTER, J., *Matter of Lederman [Ross],* N. Y. L. J., July 13, 1948, p. 67, col. 1).

In addition to the foregoing authorities, the following strongly illuminate the subject at hand and bear controlling influence in determining my conclusion herein.

In *Matter of Reynolds* v. *Triborough Bridge & Tunnel Authority* (276 App. Div. 388) it is stated by SHIENTAG, J. (pp. 392–393) as follows:

'' This court is fully aware that, in an article 78 proceeding to review the determination of an administrative agency, and this applies to hearings under section 22 of the Civil Service Law, the power of the reviewing court is a limited one *(Matter of Burke* v. *Bromberger,* 300 N. Y. 248; *Matter of Miller* v. *Kling,* 291 N. Y. 65; *Matter of Humphrey* v. *State Ins. Fund,* 298 N. Y. 327; *People ex rel. Guiney* v. *Valentine,* 274 N. Y. 331). It is only when there is no substantial evidence of a competent, probative force to sustain the administrative conclusion that a court is warranted in setting it aside *(Matter of Weber* v. *Town of Cheektowaga,* 284 N. Y. 377, 380; *Matter of O'Kelly* v. *Hill,* 286 N. Y. 593).

'' The rule is simple; its application, however, is beset with many difficulties. Each case, therefore, must be considered in the light of the particular circumstances there involved. In reviewing administrative determinations, a court must consider on the one hand that such determinations may not be disturbed

where there is substantial evidence to support them—evidence sufficient to satisfy a reasonable man, and on the other hand a reviewing court must also consider that insufficiency of evidence is, in the eyes of the law, no evidence—certainly no evidence of any substantial character (*Matter of Case*, 214 N. Y. 199; *Matter of Stork Restaurant* v. *Boland*, 282 N. Y. 256, 273–274). A reviewing court has more than a passive, acquiescent function to perform when it passes upon the determinations of administrative agencies; it has a real judicial function to exercise where it reviews the sufficiency and the substantiality of the evidence upon which those agencies have acted.''

In *Matter of Pollak* v. *Conway* (276 App. Div. 435) wherein was involved the administrative determination as to what an examination for a junior accounting position should contain, it was held that the administrative determination should not be interfered with by a court unless it can find that such determination was arbitrary and capricious. Quoting from the opinion therein, it is stated by BERGAN, J., at pages 437–438, as follows:

'' The argument, one way or the other, seems to us to present an administrative and not a judicial question. Even if we were strongly persuaded that the petitioner is right about what the scope and content of the examination should be, and we think it fair to say we have reservations about that, we would not be justified in interfering with an administrative determination based on a different view of what kind of examination would be better.

'' To reach the conclusion that the commission was wrong in framing this kind of an examination for this kind of a position in the sense in which a court could interfere, we would have to say that the decision to give this examination was arbitrary and capricious which is fairly close to saying no reasonable man would have regarded this examination as appropriate. * * * Even if the scope of judicial power were very broad — much broader than we have yet thought admissible in this State — the court would exercise the power very sparingly. * * * It is because judges are not technically equipped to be administrators, and a judicially administered government would be a creaking and cumbersome affair. * * * The success of judicial review has rested more on the implications of its existence and availability than upon an explicit exercise of power.''

The court may not override the finding of the administrative body resting on substantial evidence. The judicial function is exhausted when there is found to be a rational basis for the

conclusions approved by the administrative body (*Matter of Park East Land Corp.* v. *Finkelstein,* 299 N. Y. 70).

In light of the testimony and documentary proof before me, it is my conclusion that upon the facts herein, the principles of law enunciated in the authorities cited have controlling application. Accordingly, I cannot find that the determination of the commission here was capricious, arbitrary or unreasonable, nor can I find that no reasonable basis appears upon which the commission could have reached its determination. The foregoing constitutes the essential facts found by me and constitutes the decision of the court required by section 440 of the Civil Practice Act. Settle final order denying petitioner's application and dismissing the proceeding.